ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| MANUEL E. FIGUEROA AGOSTO  Apelados  v.  NUC UNIVERSITY  Apelantes | KLAN202400102 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Caso Núm.: SJ2023CV03989  Sobre: DESESTIMACIÓN SUMARIA DE CAUSAS DE ACCIÓN SOBRE DESPIDO INJUSTIFICADO Y REPRESALIAS EN EL EMPLEO |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece ante *nos*, Manuel E. Figueroa Agosto (Figueroa Agosto) y nos solicita que revisemos la *Sentencia Parcial* emitida el 26 de enero de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante dicho dictamen, el TPI desestimó sumariamente las causas de acción sobre represalias y despido injustificado.

Por los fundamentos que se exponen a continuación, *confirmamos* la *Sentencia Parcial* recurrida.

**I.**

El 3 de mayo de 2023, Figueroa Agosto presentó una *Querella* al amparo del procedimiento sumario laboral establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada (32 LPRA sec. 3118 *et seq.*) (Ley Núm. 2-1961), en contra de NUC University. En dicha *Querella*, esgrimió que NUC University lo despidió injustificadamente de su empleo como profesor a tiempo completo

de la Facultad de Administración de Empresas del Programa Graduado *Online* de la Institución. Manifestó que fue despedido luego de haber presentado varias quejas internas. Indicó, además, que NUC University le adeuda $37,800.00 en concepto de salarios, correspondientes a una compensación por la diferencia entre la carga de créditos académicos delegados, mayor al pactado en el contrato, más las penalidades. Así, planteó que fue despedido sin mediar justa causa en violación a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (29 LPRA sec. 185a *et seq.*), conocida como la Ley Sobre Despidos Injustificados (Ley Núm. 80-1976); la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada (29 LPRA sec. 194 *et seq.*), conocida como la Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial (Ley Núm. 115-1991); y, la Ley Núm. 379 de 15 de mayo de 1948, según enmendada (29 LPRA sec. 273 *et seq.*), conocida como la Ley para Establecer la Jornada de Trabajo en Puerto Rico (Ley Núm. 379-1948).

El 24 de mayo de 2023, NUC University presentó una *Contestación a Querella*. En apretada síntesis, negó las alegaciones de la *Querella*. Sostuvo que no adeuda suma de dinero alguna a Figueroa Agosto por concepto de salarios ni por ninguna otra razón. Añadió que Figueroa Agosto incurrió en un patrón de conducta impropia y violatoria a las normas de la universidad y a sus obligaciones esenciales al rehusarse reiteradamente a llevar a cabo funciones o tareas propias de su empleo y a seguir instrucciones impartidas por su patrono en el legítimo ejercicio de sus funciones. Así, expresó que Figueroa Agosto no fue despedido de forma injustificada.

Luego de varios incidentes procesales, innecesarios pormenorizar, el 23 de octubre de 2023, NUC University presentó una *Moción Solicitando Sentencia Sumaria*. A grandes rasgos, solicitó

que se dictara sentencia sumaria por no existir hechos materiales en controversia. Alegó que Figueroa Agosto fue despedido por haber incumplido directrices e instrucciones dadas por su patrono. Además, señaló que Figueroa Agosto incurrió en conducta impropia, desordenada y en un acto de insubordinación al negarse a llevar a cabo tareas que le fueron asignadas y que le correspondían, así como, el faltarle el respeto y conducirse de forma inapropiada para con funcionarios de la universidad. Consecuentemente, solicitó que se desestimara la *Querella* presentada en su contra.

Así las cosas, el 29 de noviembre de 2023, Figueroa Agosto presentó una *Oposición a Moción de Sentencia Sumaria en Cumplimiento de Orden*. En síntesis, arguyó que no procedía dictar sentencia sumaria por existir hechos materiales en controversia. Específicamente, adujo que sus quejas internas estuvieron relacionadas a una modificación unilateral a sus funciones y responsabilidades, distintas a las que ejerció durante diez (10) años. Acentuó que las modificaciones fueron referentes a la adquisición de un teléfono móvil para realizar funciones que no formaban parte de sus deberes. Reiteró que fue despedido sin justa causa y que la reclamación de salarios no está prescrita. Asimismo, afirmó que las quejas presentadas a través del sistema interno de la universidad eran actividades protegidas, por lo que tiene derecho a los remedios provistos por la Ley Núm. 115-1991, *supra*. Por lo cual, solicitó que se declarara no ha lugar la solicitud de sentencia sumaria que presentó NUC University.[1]

Posteriormente, el 26 de enero de 2024, el TPI emitió una *Sentencia Parcial* mediate la cual declaró *Ha Lugar* parcialmente la *Moción Solicitando Sentencia Sumaria* que presentó NUC University.

---

[1] El 6 de diciembre de 2023, NUC University presentó una *Moción en Cumplimiento de Orden*, en la cual sostuvo que Figueroa Agosto no logró controvertir los hechos con prueba que sustente la existencia de una controversia real que haga necesaria la celebración de una vista evidenciaria. El 7 de diciembre de 2023, el TPI acogió la *Moción en Cumplimiento de Orden* y dio por sometido el asunto.

En consecuencia, desestimó la reclamación sobre despido injustificado y represalias. En dicha *Sentencia Parcial,* el TPI razonó que el despido de Figueroa Agosto estuvo justificado y que este tiene derecho a reclamar la licencia de vacaciones acumuladas y no pagadas en proporción a los años 2018 y 2019, pues, partiendo de la fecha del despido de su empleo, estos no se encuentran prescritos. Además, indicó que Figueroa Agosto también tendría derecho a reclamar la remuneración correspondiente a los créditos en exceso de la carga académica pactada, respecto a los años 2018, 2019, 2020, 2021 y 2022, ya que, según nuestro ordenamiento jurídico, el empleado podrá reclamar hasta cinco (5) años anteriores a la fecha de la cesantía. Así, sostuvo que la reclamación de salarios y por concepto de vacaciones de fechas anteriores a las indicadas está prescrita.

Finalmente, el TPI señaló en la *Sentencia Parcial* que está en controversia si en efecto Figueroa Agosto tiene derecho a las reclamaciones de salarios, ya que, no se presentó evidencia sobre si NUC University le asignó créditos académicos en exceso de lo acordado sin la debida remuneración y si se concedieron las vacaciones acumuladas y no pagadas.

Inconforme con esa determinación, el 5 de febrero de 2024, Figueroa Agosto acudió ante *nos* mediante un recurso de *Apelación* y señaló la comisión de los siguientes errores:

**PRIMER ERROR**
**Erró el Honorable Tribunal de Primera Instancia al haber desestimado sumariamente las causas de acción de despido injustificado y de represalias en el empleo alegadas por el apelante compareciente, no obstante que según surge del expediente judicial, existen varios hechos en controversia que dependen a su vez de aspectos de credibilidad, así como del análisis e interpretación de la Ley Federal FERPA y otros estatutos relacionados.**

**SEGUNDO ERROR**
**Erró el Honorable Tribunal de Primera Instancia al haber considerado las declaraciones juradas sometidas por la parte apelada como parte de su escrito de sentencia sumaria, no obstante que las**

**mismas son inadmisibles bajo la doctrina de "Sham Affidavit".**

**TERCER ERROR**
**Erró el Honorable Tribunal de Primera Instancia al haber desestimado sumariamente las reclamaciones del apelante sin haber considerado el Reglamento de Personal de la parte apelada.**

El 15 de febrero de 2024, este Tribunal emitió una *Resolución* mediante la cual le concedimos a NUC University un término de veinte (20) días para presentar su alegato. El 20 de febrero de 2024, NUC University presentó un *Alegato en Oposición a Recurso de Apelación.* Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Sentencia Sumaria**

Como es sabido, la Regla 36 de Procedimiento Civil (32 LPRA Ap. V) regula todo lo relacionado a la moción de sentencia sumaria. *Acevedo Arocho y otros v. Departamento de Hacienda y otros*, 2023 TSPR 80, 212 DPR __ (2023). Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. Íd. Véase, además, *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021).

El propósito que persigue el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *González Meléndez v. Municipio de San Juan*, 2023 TSPR 95, 212 DPR ___ (2023). Véase, además, *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*; *Rodríguez Méndez et al. v. Laser Eye Surgery*, 195 DPR 769, 785 (2016). Por tanto, quien promueva la sentencia sumaria deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. Así, la Regla 36.3 de Procedimiento Civil (32 LPRA Ap. V),

establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra*; *León Torres v. Rivera Lebrón*, 204 DPR 20, 43 (2020).

Por ser la sentencia sumaria un remedio discrecional, el principio rector para el uso de este mecanismo es el sabio discernimiento del juzgador, ya que mal utilizada puede privar a una parte de su día en corte, principio elemental del debido proceso de ley. *Jusino et als. v. Walgreens*, 155 DPR 560 (2001). Así pues, un tribunal podrá emitir una sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas – según fueran ofrecidas – surge que no existe una controversia real sustancial en cuanto a ningún hecho material, restando entonces resolver la controversia en estricto derecho. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra*; Regla 36.3 de Procedimiento Civil, *supra.*

Así, para sostener u oponerse a una petición de sentencia sumaria las partes podrán presentar, entre otras, las siguientes piezas de evidencia: certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidavits, y hasta prueba oral. *Acevedo Arocho y otros v. Departamento de Hacienda y otros*, *supra,* citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Nuestro máximo Foro ha sido enfático en que, cuando una parte acompaña su solicitud u oposición de sentencia sumaria de una o varias declaraciones juradas, estas deben cumplir con las disposiciones especiales pautadas en la Regla 36.5 de Procedimiento

Civil (32 LPRA Ap. V). *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra.*

A esos efectos, se requiere que las declaraciones juradas demuestren afirmativamente el conocimiento personal y la calificación del testigo, también se requiere que se presenten únicamente hechos admisibles como evidencia en un juicio. Hernández Colón, *op. cit.* pág. 319. Por consiguiente, cuando la solicitud de sentencia sumaria está apoyada en una o varias declaraciones juradas, dicha prueba no podrá contener solo conclusiones sin hechos específicos que las sustenten. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra.* Lo anterior, serían meras conclusiones reiterando las alegaciones de la demanda y, por tanto, prueba insuficiente y sin valor probatorio. Íd. citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. J.T.S., 2000, T. I, págs. 615-616.

Nuestro máximo Foro ha sido enfático en que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica que dicha moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra.* Ahora bien, el Tribunal Supremo de Puerto Rico ha reiterado que una moción de sentencia sumaria no procederá cuando: (1) existen hechos materiales controvertidos (2) hay alegaciones afirmativas en la demanda que no han sido refutadas (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material o (4) como cuestión de derecho no procede. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra.* Véase, además, *SLG Fernández-Bernal v. RAD-MAN et al., supra; Vera Morales v. Bravo,* 161 DPR 308, 333-334 (2004).

De igual forma, el mecanismo de sentencia sumaria no es utilizable cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra*. Véase, además, *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656 (2017); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010); *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994).

Finalmente, hay que señalar que al momento de atender una solicitud de revisión de sentencia sumaria los foros apelativos estamos llamados a "examinar el expediente de *novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Acevedo Arocho y otros v. Departamento de Hacienda y otros, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*; *Rivera Matos et al. v. ELA*, 204 DPR 1010, 1025 (2020). Según ha establecido el Tribunal Supremo, este Tribunal está limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario (lo cual implica que, en apelación, los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el tribunal de instancia ni esbozar nuevas teorías); (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *González Meléndez v. Municipio de San Juan, supra*. Así pues, los foros apelativos estamos en la misma posición que los tribunales de instancia y se utilizan los mismos criterios para evaluar una solicitud de sentencia sumaria. Íd.

### B. Despido Injustificado

Como se sabe, existe un interés apremiante del Estado en regular las relaciones obrero-patronales, enmarcado ese interés en una política pública dirigida a proteger los derechos de los trabajadores. *Rivera v. Pan Pepín*, 161 DPR 681 (2004). *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001). Consecuentemente, se

adoptó la Ley Núm. 80-1976, *supra,* cuyo fin es proteger a los empleados de actuaciones arbitrarias del patrono al disponer de remedios económicos que desalienten los despidos injustificados. *Ortiz Ortiz v. Medtronic,* 209 DPR 759 (2022). Véase, además, *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920 (2015); *Romero et als. v. Cabrer Roig et als.,* 191 DPR 643 (2014).

Conforme a lo anterior, el Artículo 1 de la Ley Núm. 80-1976 (29 LPRA sec. 185a), establece que todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono una indemnización. Ese resarcimiento se conoce comúnmente como *la mesada* y constituye un remedio exclusivo disponible para los empleados despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despedido. *Ortiz Ortiz v. Medtronic, supra; León Torres v. Rivera Lebrón, supra.* No obstante, lo anterior, no existe una prohibición absoluta en contra del despido de un empleado, ya que este puede ser despedido si existe una justa causa, pero si no lo hay entonces se configura la repercusión de que el patrono deberá asumir el pago de la mesada a favor del empleado. *Ortiz Ortiz v. Medtronic, supra.*

Así pues, nuestro máximo Foro ha reiterado que la Ley Núm. 80-1976, *supra,* cumple dos (2) propósitos fundamentales, a saber: (1) desalentar la práctica de despedir a empleados sin que medie justa causa, y (2) proveerle a los empleados remedios consustanciales a los daños causados por los despidos injustificados. Íd. Véase, además, *González Méndez v. Acción Social et al.,* 196 DPR 213 (2016). Así, en vista de su propósito reparador, la Ley Núm. 80-1976, *supra,* debe siempre interpretarse de manera liberal y favorable al empleado. *Jusino et al., v. Walgreens,* 155 DPR 560 (2001).

A pesar de que la Ley Núm. 80-1976, *supra,* no define lo que constituye un despido injustificado, el estatuto expone de forma ilustrativa ciertas instancias en las que se justifica el despido de un empleado por parte del patrono. *Ortiz Ortiz v. Medtronic, supra*; *León Torres v. Rivera Lebrón, supra.* A esos efectos, el Artículo 2 de la Ley Núm. 80-1976, *supra,* establece, entre otras cosas, que se entenderá como justa causa para el despido de un empleado: (1) que el empleado incurra en un patrón de conducta impropia o desordenada; (2) que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente; y, (3) cuando el empleado ha violado reiteradamente las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se hayan suministrado oportunamente al empleado. *León Torres v. Rivera Lebrón, supra.*

Además, no se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Ortiz Ortiz v. Medtronic, supra*; *León Torres v. Rivera Lebrón, supra.* En cambio, el patrono tiene derecho a fijar los requisitos que debe cumplir una persona para poder ocupar un empleo. *Ortiz Ortiz v. Medtronic, supra,* citando a A. Acevedo Colom, *Legislación Protectora del Trabajo Comentada,* 8va ed., San Juan, Ed. Ramallo Printing Bros., 2005, pág. 145. De igual forma, tiene derecho a fijar unos niveles mínimos de desempeño y/o producción, los cuales el empleado debe alcanzar para llegar a un nivel de competencia. Íd. No obstante, los requisitos fijados por el patrono deben guardar una relación directa con las funciones del empleo y los niveles de desempeño y/o producción deben ser razonables. Íd. Los mismos deberán aplicarse de manera uniforme a todos los empleados y solicitantes de empleo. Íd.

De otro lado, es norma conocida que en todo contrato de empleo existe, expresa o implícita, la condición de que el empleado habrá de cumplir con los deberes de su empleo en forma competente. *Ortiz Ortiz v. Medtronic, supra; Blanes v. Tribunal de Distrito,* 69 DPR 113 (1948). Así, los patronos están facultados para aprobar reglamentos internos y establecer las normas de conducta en el lugar de trabajo que estimen necesarias, y los empleados estarán sujetos a ellos, siempre y cuando estos cumplan con el criterio de razonabilidad. *Ortiz Ortiz v. Medtronic, supra; Jusino et al., v. Walgreens, supra.* Como se ha dicho, bajo las disposiciones de la Ley Núm. 80-1976, *supra*, constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio o capricho del patrono, sino aquella vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión. *Díaz v. Wyndham Hotel Corp., supra.*

## C. Represalias

La Ley Núm. 115-1991, *supra,* se aprobó con el fin de conferirle una herramienta a los trabajadores en contra de posibles actos de represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros. *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656 (2017); *Cordero Jiménez v. UPR,* 188 DPR 129 (2013). Dicha ley protege a toda clase de empleado, con independencia de su clasificación y aplica a "todos los patronos por igual, sean estos públicos o privados". Artículo 1 Ley 115-1991 (29 LPRA sec. 194). El Artículo 2(a) de la Ley Núm. 115-1991 (29 LPRA sec. 194a), establece que:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Para compeler al cumplimiento de sus disposiciones, la propia ley crea una causa de acción a favor de los empleados. *Velázquez Ortiz v. Mun. de Humacao, supra,* pág. 669. Un empleado podrá establecer un caso de represalias en contra de su patrono mediante dos (2) vías. Íd., pág. 670. Sobre ello, el Artículo 2 (c) dispone lo siguiente:

> (c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido.

Bajo el primer esquema probatorio, el empleado debe valerse de evidencia directa o circunstancial, para probar una violación de la ley. En el segundo, el empleado puede establecer un caso *prima facie* de represalias demostrando que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado. Véase, Artículo 2(c) de la Ley Núm. 115-1991, *supra*; *Velázquez Ortiz v. Mun. de Humacao, supra,* págs. 670-671*; Rivera Menéndez v. Action Service,* 185 DPR 431 (2012); *Feliciano Martes v. Sheraton,* 182 DPR 368 (2011).

Para demostrar un caso *prima facie* de represalias, el empleado debe demostrar que su patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Velázquez Ortiz v. Mun. de Humacao, supra*, pág. 671*; Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997). La relación causal puede establecerse mediante un criterio de proximidad temporal. "[S]e puede configurar un caso *prima facie* de represalias estableciendo que la acción adversa ocurrió al "poco tiempo" del empleado haber participado en la actividad protegida." *Velázquez Ortiz v. Mun. de Humacao, supra.* Sin embargo, en aquellos casos en que la proximidad temporal no sea el factor más

adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. *Feliciano Martes v. Sheraton, supra*, pág. 400. Una vez el empleado cumpla con dicho peso probatorio, el patrono deberá alegar y fundamentar una razón legítima, no discriminatoria para el despido. El empleado, por su parte, deberá demostrar que dicha razón alegada por el patrono es un mero pretexto para despedirlo. Artículo 2 de la Ley Núm. 115-1991, *supra*; *Rivera Menéndez v. Action Service Corp., supra*, pág. 446; *Feliciano Martes v. Sheraton, supra*, pág. 394.

Cuando la proximidad temporal resulta como insuficiente para determinar si existe o no un caso de represalias al amparo de la Ley Núm. 115-1991, *supra*, entonces el empleado debe constatar si en su caso: (1) el empleado fue tratado de forma distinta a otros empleados; (2) existió un patrón de conducta antagonista en contra del empleado; (3) si las razones articuladas por el patrono, para fundamentar su acción adversa, están plagadas de inconsistencia; o (4) cualquier otra evidencia que obre en el expediente para establecer el nexo causal. *Feliciano Martes v. Sheraton*, *supra*, págs. 398-400.

### D. Doctrina del *sham affidavit*

La doctrina de *sham affidavit*, procedente de la esfera federal, está fundamentada en que una parte no puede suscitar una disputa de hechos materiales en respuesta a una solicitud de sentencia sumaria en un testimonio reciente que es contrario a una declaración bajo juramento emitida anteriormente sin proveer una explicación que justifique la contradicción entre ambas. *SLG Zapata Berríos v. J.F. Montalvo*, 189 DPR 414 (2013). El efecto de esta doctrina es que el juzgador no puede tomar en cuenta la declaración utilizada para oponerse a que se dicte sentencia sumaria. *Íd.* El Tribunal Supremo ha reconocido dos (2) modalidades del *sham*

*affidavit*: por contradicción y por omisión. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015). Conforme a la modalidad por omisión, esta procede cuando en una primera declaración la parte omite hechos que luego incluye por primera vez en una declaración más reciente. La doctrina no surtirá efecto cuando se trate de asuntos de poca trascendencia para la controversia o que sean errores de buena fe. *SLG Zapata Berríos v. J.F. Montalvo, supra*, pág. 441.

**III.**

Por estar íntimamente relacionados discutiremos los tres (3) señalamientos de error de forma conjunta.

En el primer señalamiento de error, Figueroa Agosto planteó que incidió el TPI al desestimar sumariamente las causas de acción de despido injustificado y represalias en el empleo. No obstante que según surge del expediente judicial, existen varios hechos en controversia que dependen a su vez de aspectos de credibilidad, así como del análisis e interpretación de la Ley Federal FERPA y otros estatutos relacionados. Así, en su segundo señalamiento de error, Figueroa Agosto expresó que incidió el TPI al haber considerado las declaraciones juradas sometidas por NUC University como parte de su escrito de sentencia sumaria, no obstante que las mismas son inadmisibles bajo la doctrina de *sham affidavit*. Por último, reclamó que erró el TPI al haber desestimado sumariamente sus reclamaciones sin haber considerado el Reglamento de Personal de NUC University. En ninguno de sus planteamientos le asiste la razón.

Luego de examinar y aquilatar la solicitud de sentencia sumaria, su oposición y los demás documentos presentados, resolvemos que las determinaciones de hechos realizadas por el TPI en la *Sentencia Parcial* están fundamentadas en la prueba, razón por la cual se hacen formar parte de esta *Sentencia*. Es decir, luego

de realizar una revisión *de novo* de la solicitud de sentencia sumaria, surge del expediente que el 23 de junio de 2022, el señor Martínez, Decano Académico, sostuvo una reunión con los profesores de la División de Educación en Línea o a Distancia con el propósito de informarles que la universidad les estaría entregando un teléfono móvil a ser utilizado en el desempeño de tareas propias del empleo docente, entre estas: (1) asistir a la universidad en esfuerzos de retención de estudiantes; (2) dar consejería académica a estudiantes; y, (3) referir a los estudiantes a distintos servicios que les brinda la universidad.

Además, surge del expediente que el 12 de agosto de 2022, Figueroa Agosto presentó objeciones con relación al uso y propósito del teléfono móvil por medio de correo electrónico. Así, indicó que aun cuando se le aclararan o contestaran sus interrogantes en cuanto al equipo, ello no implicaría que iba a aceptar recibir el teléfono móvil. Consecuentemente, el 23 de agosto de 2022, el señor Martinez, Decano Académico, y Yamaira Serrano Peña (Serrano Peña), tuvieron una reunión con Figueroa Agosto con el propósito de discutir el asunto respecto a la negativa de recibir el teléfono móvil. Luego de celebrada la reunión antes mencionada, Figueroa Agosto no cumplió con la directriz de recibir el teléfono móvil.

El 17 de febrero de 2023, NUC University le notificó a Figueroa Agosto y a los demás profesores de la División de Educación en Línea o a Distancia, una Descripción de Deberes del Puesto de Facultad, la cual debía ser revisada y firmada por todos los profesores de la División en o antes del 28 de febrero de 2023. Figueroa Agosto no firmó la Descripción de Deberes del Puesto de Facultad. Así las cosas, el 3 de marzo de 2023, se llevó a cabo una reunión entre Pura López, Vicepresidenta de Recursos Humanos, Serrano Peña, Directora de Recursos Humano, el señor Martínez, Decano Académico y Figueroa Agosto. Dicha reunión se intentó llevar a cabo

con relación a la negativa de Figueroa Agosto de firmar la Descripción de Deberes del Puesto de Facultad que le había sido entregada.

Ante la negativa de Figueroa Agosto de firmar la Descripción de Deberes del Puesto de Facultad, Pura López le indicó que al señor Martínez se le dan instrucciones que debía cumplir, por lo que Figueroa Agosto también debía cumplir con las instrucciones impartidas. De lo contrario, no podría continuar en el empleo con NUC University. Así, Figueroa Agosto reconoció que la reunión pautada el 3 de marzo de 2023, no se convocó para tomar medidas disciplinarias en su contra, sino que el propósito era discutir lo relativo a su negativa de firmar la Descripción de Deberes del Puesto de Facultad que le fue notificada y que las razones que motivaron su despido surgieron en dicha reunión. Ese mismo día, Figueroa Agosto fue despedido mediante carta, en la cual NUC University le informó que el motivo de su despido fue por insubordinación debido a su inconformidad y el no aceptar el procedimiento determinado por la universidad.

Hay que destacar que es el propio Figueroa Agosto quien admite que le fue impartida una directriz, la cual no acató, por el Decano Académico de recibir un teléfono móvil para llevar funciones tales como: (1) asistir a la universidad en esfuerzos de retención de estudiantes; (2) dar consejería académica a estudiantes; y, (3) referir a los estudiantes a distintos servicios que les brinda la universidad.

Además, Figueroa Agosto admitió conocer el Manual de Facultad de la Universidad, así como el Addendum aplicable a los Profesores de la División de Educación a Distancia o en Línea. Asimismo, surge de la prueba presentada que Figueroa Agosto admitió que el Supervisor de la Facultad lo es el Decano Académico, quien puede requerirle a los profesores tareas, deberes y responsabilidades más allá de las que se detallan en el Manual de

Facultad y su Addendum. También, reconoció que NUC University, como cualquier otro patrono puede de tiempo en tiempo y conforme a sus necesidades operacionales hacer cambios en las tareas o funciones que desempeñan sus empleados.

Tal y como indicamos, la instrucción de añadir el teléfono móvil a las herramientas de trabajo fue impartida a todos los profesores adscritos a la División de Educación en Línea o a Distancia con el propósito del mejor funcionamiento de la institución. De igual forma, la Descripción de Deberes del Puesto de Facultad le fue entregada a todos los profesores de la División. Ante estos hechos, el TPI aplicó correctamente los preceptos establecidos en la Ley Núm. 80-1976, *supra*, que establece como justa causa para el despido la violación reiterada de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se hayan suministrado oportunamente al empleado. *León Torres v. Rivera Lebrón, supra*; así como, los preceptos establecidos en la Ley Núm. 115-1991, *supra*. En conclusión, coincidimos con el TPI en cuanto a que el despido de Figueroa Agosto estuvo justificado, pues de lo contrario se frustraría la ordenada marcha y normal funcionamiento de la empresa en cuestión.

Por otro lado, vale la pena aclarar que, en la oposición a la solicitud de sentencia sumaria que presentó Figueroa Agosto, este admitió algunos de los hechos propuestos por NUC University y en varias ocasiones se limitó a incluir aseveraciones sin hacer referencia específica a evidencia que las sustentara. Además, no incluyó en su oposición a la solicitud de sentencia sumaria una relación concisa y organizada, con una referencia a los párrafos enumerados (de forma independiente) por la parte promovente de los hechos esenciales y pertinentes que están controvertidos.

Tampoco incluyó declaraciones juradas que controvirtiera los hechos propuestos por NUC University.

Por último, las declaraciones juradas que presentó NUC University en apoyo a su solicitud de desestimación no constituyen un *sham affidavit*. De una lectura meticulosa de las declaraciones juradas junto a las deposiciones, no surge ninguna contradicción. Es decir, el testimonio de los funcionarios de NUC University y las declaraciones juradas son consistentes entre sí.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia Parcial* recurrida. Se devuelve el caso al TPI para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones